**No. 2:21-CV-0062-Z-BR**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

---

**JOSHUA DAVID STOCKER,**

**PETITIONER**

**v.**

**BRIAN COLLIER, DIRECTOR, TDCJ,**

**RESPONDENT**

---

# BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

---

SUBMITTED BY:

JAMES EDD WOOLDRIDGE
Attorney & Counselor at Law
SBN 24010492
First Bank Southwest Building
600 S. Tyler Street
Suite 1704
Amarillo, Texas 79101
Tel: (806) 418 8575
Fax: (806) 418 8576
j.e.wooldridge@att.net

# TABLE OF CONTENTS


| | |
|---|---|
| **TABLE OF CONTENTS** | **2** |
| **TABLE OF AUTHORITIES** | **3** |
| **JURISDICTIONAL STATEMENT** | **7** |
| **ISSUES PRESENTED FOR REVIEW** | **8** |
| **STATEMENT OF THE CASE** | **10** |
| **SUMMARY OF THE ARGUMENT** | **12** |
| **ARGUMENT** | **14** |
| **Issue #1** | **14** |
| **Issue #2** | **30** |
| **Issue #3** | **38** |
| **Issue #4** | **48** |
| **PRAYER** | **52** |
| **CERTIFICATE OF COMPLIANCE** | **52** |

## TABLE OF AUTHORITIES

### CASES

*Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) 24

*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629 (1935) 49

*Brady v. Maryland*, 373 U.S. 83 (1963) 16,39

*California v. Trombetta*, 467 U.S. 479 (1984) 16,40,45

*Chapman v. California*, 386 U.S. 18 (1967) 24

*Charles v. State*, 424 S.W.2d 909 (Tex.Crim.App.1968) 15,30,39,48
certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401

*Davis v. Alaska*, 415 U.S. 308 (1974) 21,45

*Ex parte Ghahremani*, 332 S.W.3d 470 (Tex.Crim.App.2011) 49

*Fuller v. Johnson*, 114 F.3d 491 (5th Cir. 1997) 23

*Giglio v. United States*, 405 US 150, 154, 92 S. Ct. 763 (1972) 24

*Grannis v. Ordean*, 234 U.S. 385 (1914) 21,45

*Harm v. State*, 183 S.W.3d 403 (Tex.Crim.App. 2006) 16,40

*Haywood v. State*, 507 S.W.2d 756 (Tex.Crim.App.1974) 23

*In re Oliver*, 333 U.S. 257 (1948) 21,45

*In re Murchison*, 349 U.S. 133 (1955) 15,39

*In re Winship* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) 31,48

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742 (Tex. 2003) 24

*Kyles v. Whitley*, 514 U.S. 419 (1995) 17,18,41,42

*Losada v. State*, 721 S.W.2d 305, 311 (Tex.Crim.App.1986) 23

*Lowry v. State*, 692 S.W.2d 86, (Tex.Crim.App.1985) 31,48

*Moody v. Johnson*, 139 F.3d 477 (5th Cir. 1998) 23

*Napue v. Illinois*, 360 U.S. 264 (1959) 24,49

*Phillips v. State*, 650 S.W.2d 396 (Tex.Crim.App. 1983) 18,42

*State v. Frye*, 897 S.W.2d 324 (Tex.Crim.App.1995) 18,42

*State v. Terrazas*, 962 S.W.2d 38 (Tex.Crim.App. 1998) 19,42

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984) 21,45

*Strickler v. Green*, 527 U.S. 263 (1999) 16,40

*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976) 49

*United States v. Auten*, 632 F. 2d 478 (5th Cir. 1980) 16,40

*United States v. Bagley,* 473 U.S. 667 (1985) 16,24,40

*United States v. Barham*, 595 F.2d 231 (5th Cir. 1979) 24

*United States v. Brown*, 539 F.2d 467 (5th Cir.1976) 15,39

*United States v. Morrison*, 449 US 361 (1981) 18,42

*United States v. Young*, 470 U.S. 1 (1985) 23

*Washington v. Texas,* 388 U.S. 14 (1967) 21,45

*Youngblood v. West Virginia*, 547 US 867 (2006) 18,41

**CONSTITUTIONS**

U.S. CONST. amend. V 14,30,38,47

U.S. CONST. amend. VI 44

U.S. CONST. amend. XIV 15,30,38,47

TEX. CONST. art. I, § 10 21,44

TEX. CONST. art. I, § 19 15,31,39,48

**STATUTES**

28 U.S.C. §2244 7

TEX.CODE CRIM. PROC. ANN. art. 1.04 15,31,39,48

TEX.CODE CRIM. PROC. ANN. art. 18.20 § 13(a) 32

TEX.CODE CRIM. PROC. ANN. art. 18.20 § 15(a) 32

TEX.CODE CRIM. PROC. ANN. art. 18.20 § 15(b) 33

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) 20,43

TEX. PEN. CODE ANN. § 16.02(a) 34

TEX. PEN. CODE ANN. § 16.02(b)(1) 34

TEX. PEN. CODE ANN. § 16.02(b)(2) 35

TEX. PEN. CODE ANN. § 16.02(b)(3) 35

TEX. PEN. CODE ANN. § 16.02(b)(4) 35

TEX. PEN. CODE ANN. § 16.02(b)(5) 36

| | |
|---|---|
| TEX. PEN. CODE ANN. § 16.02(f) | 36 |
| TEX. PEN. CODE ANN. § 37.02(a)(1) | 21 |
| TEX. PEN. CODE ANN. § 37.03(a) | 22 |
| TEX. PEN. CODE ANN. § 37.03(b) | 22 |
| TEX. PEN. CODE ANN. § 37.04(a) | 22 |
| TEX. PEN. CODE ANN. § 37.04(b) | 22 |
| TEX. PEN. CODE ANN. § 37.04(c) | 22 |
| TEX. PEN. CODE ANN. § 37.05 | 22 |
| TEX. PEN. CODE ANN. § 37.06 | 23 |

# JURISDICTIONAL STATEMENT

## Subject Matter Jurisdiction in the District Court

Petitioner is in custody in violation of the Constitution of the United States of America from a final judgment of a state court having occurred in the Northern District of Texas. Petitioner was convicted in 2005, with direct appeal and petition for discretionary review concluded in 2007. The factual predicate of the claims herein presented was unavailable to Petitioner prior to his first state application for a writ of habeas corpus filed in 2018. Said application was decided on April 1ST, 2020, thereby exhausting state remedy. This petition, filed within one year thereof, is therefore timely. 28 U.S.C. §2244.

## ISSUES PRESENTED FOR REVIEW

**Petitioner's ISSUE #1: Petitioner was denied Due Process, the right of Confrontation, and a fair trial by the State's failure to disclose evidence favorable to the accused, to wit: that co-defendants Tori Brooke Patrick and Guin Garcia had been granted Use Immunity Agreements, had been instructed to testify falsely about said agreements, and the State's sponsor of same before Petitioner's Jury, thus suborning aggravated perjury to secure a conviction against Petitioner, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 19 of the Texas Constitution.**

**Petitioner's ISSUE #2: Petitioner was denied Due Process and a fair trial by and through the State's use of illegal and inadvertently revealed wiretaps.**

**Petitioner's ISSUE #3: Petitioner was denied Due Process, the right of Confrontation, and a fair trial by the State's failure to disclose evidence favorable to the accused, to wit: that co-defendant Stephen Craig Kimberlin had been granted a Use Immunity Agreement, and apparently had**

**been. given some type of highly favorable agreement for secret early release from prison, in exchange for who knows what, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 19 of the Texas Constitution.**

**Petitioner's ISSUE #4: Petitioner was denied Due Process and a fair trial before an impartial jury by and through false evidence material to the State's case, in that new evidence surfaced, unavailable at the time of his trial, that would tend to exonerate, and which casts doubt on the entirety of the State's concocted story against him, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution.**

## STATEMENT OF THE CASE

Petitioner Joshua David Stocker was charged by way of indictment with the offense of Capital Murder, alleged to have been committed on March 3RD, 2003 in Cause Number 15,307-A in the 47TH Judicial District Court in and for Randall County, Texas, styled the State of Texas v. Joshua David Stocker. The victim alleged in said offense was Dustin Pool. Petitioner was appointed counsel for his representation in that matter, said counsel initially being C.J. McElroy and Mike Watkins. Trial by jury was had from July 11TH to July 21ST, 2005. Petitioner was found guilty and sentenced to confinement for Life in the Texas Department of Criminal Justice, Institutional Division.

Petitioner subsequently filed an appeal in the Court of Appeals for the Seventh District of Texas at Amarillo, such appeal having been numbered as 07-05-00285-CR and for which Petitioner received appointed counsel L. Van Williamson. The appeal was denied on May 16TH, 2007. Petitioner thereupon petitioned the Court of Criminal Appeals for discretionary review in PD-0968-07, with said petition being refused on September 12TH, 2007.

Petitioner thereafter applied for a writ of habeas corpus with the Court of Criminal Appeals in WR-88,099-1 (numbered 15,307-A-1 in the originating trial court) filed on January 16TH, 2018. The Court of Criminal Appeals denied said application on April 1ST, 2020.

Petition for a Writ of Habeas Corpus was filed in this matter on April 1ST, 2021.

Petitioner has not previously petitioned for a writ of habeas corpus in this matter.

## SUMMARY OF THE ARGUMENT

1. Petitioner suffered multiple Brady violations through through witness tampering and subornation of aggravated perjury involving co-defendants, one of whom was the only witness to the inception of events culminating in decedent's death, specifically that use immunity agreements were not only not disclosed, but actively concealed, witnesses were instructed to perjure in regards thereto, and such misleading testimony was never corrected.

2. In the course of subsequent proceedings involving a co-defendant, many years after, evidence was discovered in the form a prosecutor notes that the prosecution had been listening to co-defendant conversations illegally, since there were never any disclosures of the use of wiretaps, as required by law. The evidence was prepared in anticipation of Petitioner's trial.

3. A co-defendant, who in fact was the principal source of information for the prosecutions version of events inculpating Petitioner, apparently struck some secretive deal that provided for his secret early release from prison, as demonstrated by his 2014 Facebook page replete with photographs of the

co-defendant with his adult son despite still being listed by the Texas Department of Criminal Justice as remaining incarcerated. No such agreement was ever disclosed to Petitioner.

4. Decedent's housemate and business partner, who was informed as to decedent's state of mind and activities, and participated therein, came forward after many years and gives a completely different version of events leading to decedent's murder. In contrast to the prosecution version of low-level local cartels in dispute, decedent was working as a snitch in conjunction with the Panhandle Regional Narcotics Task Force to bust the cartels with which said unit had been cooperating in the distribution of narcotics, in view of said unit's impending dissolution following its involvement in the Tulia fiasco. The prosecution version was developed to conceal the true nature of decedent's demise and law enforcement's role therein, and law enforcement's participation in the distribution of narcotics.

## ARGUMENT

**PETITIONER'S ISSUE #1: Petitioner was denied Due Process, the right of Confrontation, and a fair trial by the State's failure to disclose evidence favorable to the accused, to wit: that co-defendants Tori Brooke Patrick and Guin Garcia had been granted Use Immunity Agreements, had been instructed to testify falsely about said agreements, and the State's sponsor of same before Appellant's Jury, thus suborning aggravated perjury to secure a conviction against Appellant, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 19 of the Texas Constitution.**

## STANDARD OF REVIEW

## DUE PROCESS

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX.CODE CRIM. PROC. ANN. art. 1.04. A fair trial by a fair tribunal is a basic requirement of due process. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *United States v. Brown*, 539 F.2d 467, 469 (5th Cir.1976).

## *BRADY* & CONRONTATION

A defendant has a constitutional right to have the government disclose evidence in its possession which is material and exculpatory. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). Impeachment evidence also falls within the *Brady* rule. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375 (1985); *Harm v. State,* 183 S.W.3d 403, 408 (Tex.Crim.App. 2006). The State's duty under *Brady* requires disclosure of favorable evidence known only to the police. *Harm,* at 406. The obligation to disclose evidence favorable to a defendant is automatic for the government, and failure to disclose such information is not excused merely because the prosecutor claims he did not have actual knowledge of such favorable evidence. *California v. Trombetta*, 467 U.S. 479, 485 (1984); *United States v. Auten*, 632 F. 2d 478, 481-482 (5th Cir. 1980).

To demonstrate reversible error for violation of *Brady* rights, a defendant must show (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the withheld evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Harm,* at 406. See also *Strickler v.*

*Green*, 527 U.S. 263, 281-282 (1999). As to the third element, materiality, (1) it does not require demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted in acquittal; (2) it is not a sufficiency-of-the-evidence test; and (3) once materiality is established, the harmless error analysis has no application; and (4) it must be assessed collectively, not item by item. *Kyles v. Whitley*, 514 U.S. 419, 434-436 (1995).

Brady exists to protect the due-process rights of defendants. As the Supreme Court explained in *Trombetta*, 467 U.S. at 485, "[U]nder the Due Process Clause..., criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right..., [a] defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt.

A conviction must be reversed upon "[a] showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Youngblood v. West Virginia*, 547 US 867, 870, 126 S. Ct. 2188, 165 L. Ed.2d 269 (2006), quoting *Kyles*, 514 U.S. at 435. Dismissal of the case with prejudice is warranted where a defendant suffers demonstrable prejudice, or the substantial threat thereof, and where the taint cannot be identified and neutralized by other means. In other words, dismissal with prejudice is appropriate in rare cases where it is the only means of adequately protecting an individual's rights and society's interest in checking abuse of the State's power. *State v. Frye*, 897 S.W.2d 324, 330 (Tex.Crim.App. 1995); *Phillips v. State*, 650 S.W.2d 396, 399-403 (Tex.Crim.App. 1983). In *Frye*, the prosecutor's act of interviewing the defendant in violation of his Sixth Amendment right to counsel, which revealed the defense's theory of the case, demonstrated a substantial threat of prejudice arising from the State's misconduct that could not be neutralized by other means. *Frye*, at 326-330. The Court of Criminal Appeals held that dismissal with prejudice was the appropriate remedy. *Id.*; see also *United States v. Morrison*, 449 US 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981) (Dismissal is an appropriate remedy where the State's misconduct of

a constitutional dimension leads to permanent, rather than transitory prejudice, which cannot be purged to assure that a defendant can effectively defend himself and that he will not be unfairly convicted); see also *State v. Terrazas*, 962 S.W.2d 38, 41 (Tex.Crim.App. 1998) (When a Sixth Amendment violation has occurred, the trial court must identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial, but a dismissal may be proper if the defendant suffers demonstrable prejudice, or a substantial threat thereof, and where the trial court is unable to identify and neutralize the taint by other means.).

Upon motion of the defendant showing good cause therefor and upon notice to the other parties, the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs,

objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. TEX. CODE CRIM. PROC. ANN. art. 39.14(a). Pursuant to Article 39.14, Petitioner filed on April 6TH, 2005, his Motion For Discovery seeking "30. (A)ny promises whether implied or expressed, or any aid, assistance, reward, compensation, or benefit conferred or to be conferred upon any witness, which said witness or witnesses would or might receive if said witness testified on behalf of the State, or any implied or expressed promise of aid or assistance or of possible benefit made by the State, by or through any attorney or law enforcement agency, to any attorney or member of the family or to any other person with whom said witness may have been associated or through whom said witness may have learned of said promise." and also on the same date his Motion To Produce Exclupatory and Mitigating Evidence seeking "any exculpatory and/or mitigating evidence and/or facts within the possession, custody or control of the District Attorney or any of his agents," or within the knowledge of, the state or any of its agencies. C.R. 1:40,53. The trial court granted said motions. C.R. 1:47,55.

In all criminal prosecutions the accused shall be confronted by the witnesses against him. U.S. CONST. amend. VI. TEX. CONST. art. I, § 10. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528 (1984); cf. *Strickland v. Washington,* 466 U.S. 668, 684-685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense," whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment. *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920 (1967); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105 (1974). An essential component of procedural fairness is an opportunity to be heard. *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499 (1948); *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779 (1914).

## SUBORNATION OF AGGRAVATED PERJURY

A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning she makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath. TEX.

PENAL CODE ANN. § 37.02(a)(1). A person commits an offense if she commits perjury as defined in Section 37.02, and the false statement: is made during or in connection with an official proceeding; and is material. TEX. PENAL CODE ANN. § 37.03(a). An offense under Section 37.03 is a felony of the third degree. TEX. PENAL CODE ANN. § 37.03(b). A statement is material, regardless of the admissibility of the statement under the rules of evidence, if it could have affected the course or outcome of the official proceeding. TEX. PENAL CODE ANN. § 37.04(a). It is no defense to prosecution under Section 37.03 (Aggravated Perjury) that the declarant mistakenly believed the statement to be immaterial. TEX. PENAL CODE ANN. § 37.04(b). Whether a statement is material in a given factual situation is a question of law. TEX. PENAL CODE ANN. § 37.04(c). It is a defense to prosecution under Section 37.03 (Aggravated Perjury) that the actress retracted her false statement before completion of the testimony at the official proceeding; and before it became manifest that the falsity of the statement would be exposed. TEX. PENAL CODE ANN. § 37.05. An information or indictment for perjury under Section 37.02 or aggravated perjury under Section 37.03 that alleges that the declarant has made statements under oath, both of which cannot be true, need not allege which statement

is false. At the trial the prosecution need not prove which statement is false. TEX. PENAL CODE ANN. § 37.06.

While the State may "prosecute with earnestness and vigor" it still must "refrain from improper methods calculated to produce a wrongful conviction. . . ." *United States v. Young*, 470 U.S. 1, 7 (1985) (quotation omitted). "It is well settled that the State is not permitted to present false evidence or allow the presentation of false evidence to go uncorrected." *Moody v. Johnson*, 139 F.3d 477, 484 (5th Cir. 1998). "To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997). A charge of perjury is a serious accusation that must be clearly supported by the evidence. *Haywood v. State*, 507 S.W.2d 756, 760 (Tex.Crim.App. 1974). While it is clear that the State may not obtain a conviction through the knowing use of perjured testimony, Appellant bears the burden of showing that the testimony used by the State was in fact perjured. *Losada v. State*, 721 S.W.2d 305, 311 (Tex.Crim.App. 1986).

The false-evidence materiality standard "is considered less demanding on a defendant than either the `reasonable probability' or *Brecht* harmless-error standards." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000). False evidence is "material" if there is "any reasonable likelihood [that the false evidence could] have affected the judgment of the jury." *Giglio v. United States*, 405 US 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The Supreme Court has explained that this materiality standard "is equivalent to the *Chapman* [*v. California*, 386 U.S. 18 (1967)] harmless-error standard." *United States v. Bagley*, 473 U.S. 667, 679 n.9 (1985); see also *United States v. Barham*, 595 F.2d 231, 242 (5th Cir. 1979) ("[The false-evidence materiality standard] is the brother, if not a twin, of the standard (`harmless beyond a reasonable doubt') for determining whether constitutional error can be held harmless."). Error is not harmless unless it "did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24.

"(P)erjured testimony, on any matter which was actually presented to and considered by the trial court in rendering the judgment assailed," is intrinsic fraud. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## APPLICATION

The conduct of the Randall County Criminal District Attorney, James Farren, and his deputies, specifically the acts of Tampering With A Witness (by and through and against Tori Brooke Patrick and Guin Garcia) and Aggravated Perjury in the course of the prosecution of Joshua Stocker, and the co-defendants involved, resulted in the intentional deprivation of Due Process, the Right of Confrontation, and renders the verdict and sentence of Petitioner constitutionally untrustworthy, entitling Joshua David Stocker to vacation of said judgment and sentence. Material evidence was withheld. Not only did the State withhold material *Brady/Bagley* impeachment evidence, the State knew of the evidence because the evidence, i.e., the Use Immunity Agreements, were created by the State and the agreement was used to induce the witnesses to rehearse testimony in anticipation of trial. Moreover, the State presented false testimony that there was no such evidence and further created and coached and intentionally suborned the false testimony specifically for the purpose of denying said evidence to Petitioner's jury. At trial, on direct question, the prosecution vehemently denied that there was a Use an Immunity Agreement with the only witness

(Patrick) to provide testimony pertaining to the initiation of the alleged kidnaping and murder. Moreover, prosecutors elicited testimony known to be false that there was no agreement. Yet the agreement was dated two years prior to trial and bears the signature of, among others, the Randall County *Criminal* District Attorney himself. Not only did the Randall County *Criminal* District Attorney personally contribute to creation of the witness agreement, Bobbie Ledbetter, an investigator for his office, witnessed the agreement and, in fact, typed it. The Randall County *Criminal* District Attorney then sponsored the investigator and suborned her false testimony denying the existence of said agreement.

The State attorneys, including the Randall County *Criminal* District Attorney's deputy Jeremy Fowler, identically made false representations about the existence of the witness agreement of Guin Garcia, encouraged the witness to make false representations about the existence of the agreement, failed to notify the court of the witnesses' false testimony, failed to notify opposing counsel of the witnesses' false testimony, failed to notify the court of the investigator's false testimony, failed to notify opposing counsel of the investigator's false testimony, continued to give false and perjured testimony regarding the agreement after Petitioner was convicted

and sentenced, and failed to notify Petitioner of the *Brady* material in the years following the trial.

Further, the Court was complicit in the denial of Petitioner's rights in this matter as evidenced by the inclusion of "Court Exhibits" indicating that, no later than the conclusion of Petitioner's trial, the court was aware that perjured testimony had been presented and yet did nothing other than secrete the evidence within the Clerk's File, and even though having been again presented with the Use Immunity Agreements of Tori Brooke Patrick during a subsequent proceeding involving Stephen Craig Kimberlin in December, 2005, a mere five months later.

In support, see *Appendix A*, Court's Exhibits (brown folder included with the Reporter's Record, State of Texas v. Joshua Stocker, Cause No. 15,307-A In The 47TH District Court for Randall County, Texas) - State's Exhibit 263; *Appendix B* – Co-Defendant's Supporting Affidavit; *Appendix C* - Attorney's Supporting Affidavit (filed in 15,310-A In The 47TH District Court for Randall County, Texas); *Appendices D-G* – Reporter's Record Excerpts from Volume 10, State of Texas v. Joshua Stocker, Cause No. 15,307-A In The 47TH District Court for Randall County, Texas; *Appendix H* – Use Immunity Agreement (Patrick); *Appendix I* – Ledbetter Memo; *Appendix J* –

Register of Actions-Case No. 18,834-A In The 47TH District Court For Randall County, State of Texas v. Tori Brooke Patrick; *Appendix K* - Reporter's Record Excerpt from Volume 11, State of Texas v. Joshua Stocker, Cause No. 15,307-A In The 47TH District Court for Randall County, Texas; *Appendix L*-Garcia Use Immunity Agreement; and *Appendix M*, Patrick Use Immunity Agreement as Defense Exhibit 14, State of Texas v. Stephen Craig Kimberlin, Cause No. 17,288-A In The 47TH District Court for Randall County, Texas, hereto attached and incorporated.

Per the affidavits of James A. Farren and Bobbie Ledbetter Bruhn, co-defendant Tori Brooke Patrick's claims are validated. Specifically, and in denial of testimony elicited in the trial of Joshua Stocker, Farren admits in his amended affidavit that, in addition to the Use Immunity Agreement, there also existed another agreement not contained in the Use Immunity Agreement, i.e., "the only promise she had from our office was that if she told the truth under oath it would inure to her benefit." Further, even that statement is false in that there existed previously an agreement that Petitioner would receive deferred adjudication on Aggravated Kidnapping and the Capital Murder charge would be dismissed, without discussion of a

term of years. *See Appendix N* - Letter from James Farren to Jeffrey Robnett dated July 19, 2004, hereto attached and incorporated.

Because of the egregiousness of the violations in this case, it is not enough to merely "identify and then neutralize the taint." The conviction should be reversed and rendered and the State's case dismissed with prejudice. The trial court in which Petitioner's case was originally heard, following testimony adduced in Petitioner's writ hearing, found as fact and concluded as a matter of law that Petitioner suffered a *Brady* violation on multiple levels and that it is likely that a jury might have reached a different conclusion had it been appropriately informed. *See Appendix O*.

Petitioner's Issue Number One should be sustained and his conviction reversed, an order of acquittal entered, or otherwise be granted a new trial.

**PETITIONER'S ISSUE #2: Petitioner was denied Due Process and a fair trial by and through the State's use of illegal and inadvertantly revealed wiretaps.**

## STANDARD OF REVIEW
## FIFTH AMENDMENT & ARTICLE I, § 19

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property,

privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX.CODE CRIM. PROC. ANN. art. 1.04.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Lowry v. State*, 692 S.W.2d 86, 87 (Tex.Crim.App.1985).

**TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 18.20**

Within a reasonable time but not later than 90 days after the date an application for an order is denied or after the date an order or the last extension, if any, expires, the judge who granted or denied the application shall cause to be served on the persons named in the order or the application and any other parties to intercepted communications, if any, an inventory, which must include notice: (1) of the entry of the order or the application; (2) of the date of the entry and the period of authorized interception

or the date of denial of the application; and (3) that during the authorized period wire, oral, or electronic communications were or were not intercepted. TEX.CODE CRIM. PROC. ANN. art. 18.20 § 13(a).

**Reports Concerning Intercepted Wire, Oral, Or Electronic Communications**

Within 30 days after the date an order or the last extension, if any, expires or after the denial of an order, the issuing or denying judge shall report to the Administrative Office of the United States Courts: (1) the fact that an order or extension was applied for; (2) the kind of order or extension applied for; (3) the fact that the order or extension was granted as applied for, was modified, or was denied; (4) the period of interceptions authorized by the order and the number and duration of any extensions of the order; (5) the offense specified in the order or application or extension; (6) the identity of the officer making the request and the prosecutor; and (7) the nature of the facilities from which or the place where communications were to be intercepted. TEX.CODE CRIM. PROC. ANN. art. 18.20 § 15(a).

In January of each year each prosecutor shall report to the Administrative Office of the United States Courts the following information for the

preceding calendar year: (1) the information required by Subsection (a) of this section with respect to each application for an order or extension made; (2) a general description of the interceptions made under each order or extension, including the approximate nature and frequency of incriminating communications intercepted, the approximate nature and frequency of other communications intercepted, the approximate number of persons whose communications were intercepted, and the approximate nature, amount, and cost of the manpower and other resources used in the interceptions; (3) the number of arrests resulting from interceptions made under each order or extension and the offenses for which arrests were made; (4) the number of trials resulting from interceptions; (5) the number of motions to suppress made with respect to interceptions and the number granted or denied; (6) the number of convictions resulting from interceptions, the offenses for which the convictions were obtained, and a general assessment of the importance of the interceptions; and (7) the information required by Subdivisions (2) through (6) of this subsection with respect to orders or extensions obtained. TEX.CODE CRIM. PROC. ANN. art. 18.20 § 15(b).

**Unlawful Interception, Use, Or Disclosure Of Wire, Oral, Or Electronic Communications**

Per Section 16.02, "computer trespasser," "covert entry," "communication common carrier," "contents," "electronic communication," "electronic, mechanical, or other device," "immediate life-threatening situation," "intercept," "investigative or law enforcement officer," "member of a law enforcement unit specially trained to respond to and deal with life-threatening situations," "oral communication," "protected computer," "readily accessible to the general public," and "wire communication" have the meanings given those terms in Article 18.20, Code of Criminal Procedure. TEX. PEN. CODE ANN. § 16.02(a).

A person commits an offense if the person intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication. TEX. PEN. CODE ANN. § 16.02(b)(1).

A person commits an offense if the person intentionally discloses or endeavors to disclose to another person the contents of a wire, oral, or electronic communication if the person knows or has reason to know the in-

formation was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection. TEX. PEN. CODE ANN. § 16.02(b)(2).

A person commits an offense if the person intentionally uses or endeavors to use the contents of a wire, oral, or electronic communication if the person knows or is reckless about whether the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection. TEX. PEN. CODE ANN. § 16.02(b)(3).

A person commits an offense if the person knowingly or intentionally effects a covert entry for the purpose of intercepting wire, oral, or electronic communications without court order or authorization. TEX. PEN. CODE ANN. § 16.02(b)(4).

A person commits an offense if the person intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when the device: (A) is affixed to, or otherwise transmits a signal through a wire, ca-

ble, or other connection used in wire communications; or (B) transmits communications by radio or interferes with the transmission of communications by radio. TEX. PEN. CODE ANN. § 16.02(b)(5).

Any offense under Section 16.02(b) is a felony of the second degree. TEX. PEN. CODE ANN. § 16.02(f).

**APPLICATION**

Co-Defendant Tori Brooke Patrick complained by way of her Petition For Writ Of Habeas Corpus in Cause Number 15,310-A that evidence had been retrieved from the State's file demonstrating that information to the detriment of Tori Brooke Patrick and her co-defendant's was obtained via illegally wiretapped conversations of Tori Brooke Patrick in preparation for the prosecution of Joshua David Stocker, Tori Brooke Patrick, and their co-defendants. *See Appendix P*. No disclosure per Texas Code of Criminal Procedure Article 18.20, § 15(a) & (b) was ever provided to Appellant, was ever made of record as required, nor was ever submitted in this matter by the State. *See Clerk's Records for State v. Stocker & State v. Patrick*. The non-existent disclosure can only be reasonably presumed to not exist nor ever to have existed because the interception of the co-defendant's communica-

tions was flatly and flagrantly illegal, further reinforced by the content and tone of the note revealing that the State was listening to Appellant's conversations in furtherance of prosecuting Petitioner and his co-defendants. Inasmuch as the State's conduct also constituted several varieties of criminal action per Penal Code Section 16.02, no doubt the State's agents had a very personal interest in not disclosing their illicit monitoring of Petitioner's co-defendant. Further, there can be absolutely no assurance that whatever undisclosed information received by the State was used to the detriment and harm of Petitioner in the prosecution against him.

Petitioner's Issue Number Two should be sustained and his sentence reversed and vacated, and otherwise a new trial ordered.

**PETITIONER'S ISSUE #3: Petitioner was denied Due Process, the right of Confrontation, and a fair trial by the State's failure to disclose evidence favorable to the accused, to wit: that co-defendant Stephen Craig Kimberlin had been granted a Use Immunity Agreement, and apparently had been. some type of highly favorable agreement for secret early release from prison, in exchange for who knows what, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 19 of the Texas Constitution.**

## STANDARD OF REVIEW

## DUE PROCESS

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV.

The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX.CODE CRIM. PROC. ANN. art. 1.04. A fair trial by a fair tribunal is a basic requirement of due process. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *United States v. Brown*, 539 F.2d 467, 469 (5th Cir.1976).

## ***BRADY* & CONRONTATION**

A defendant has a constitutional right to have the government disclose evidence in its possession which is material and exculpatory. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). Impeachment evidence also falls within the *Brady* rule. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375 (1985); *Harm v. State,* 183 S.W.3d 403, 408 (Tex.Crim.App. 2006). The State's duty under *Brady* requires disclosure of favorable evidence known only to the police. *Harm,* at 406. The obligation to disclose evidence favorable to a defendant is automatic for the government, and failure to disclose such information is not excused merely because the prosecutor claims he did not have actual knowledge of such favorable evidence. *California v. Trombetta*, 467 U.S. 479, 485 (1984); *United States v. Auten*, 632 F. 2d 478, 481-482 (5th Cir. 1980).

To demonstrate reversible error for violation of *Brady* rights, a defendant must show (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the withheld evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Harm,* at 406. See also *Strickler v. Green*, 527 U.S. 263, 281-282 (1999). As to the third element, materiality, (1)

it does not require demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted in acquittal; (2) it is not a sufficiency-of-the-evidence test; and (3) once materiality is established, the harmless error analysis has no application; and (4) it must be assessed collectively, not item by item. *Kyles v. Whitley*, 514 U.S. 419, 434-436 (1995).

Brady exists to protect the due-process rights of defendants. As the Supreme Court explained in *Trombetta*, 467 U.S. at 485, "[U]nder the Due Process Clause..., criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right..., [a] defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt.

A conviction must be reversed upon "[a] showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Youngblood v. West Virginia*, 547 US 867, 870, 126 S. Ct. 2188, 165 L. Ed.2d 269 (2006), quoting *Kyles*, 514 U.S. at 435. Dismissal of the case with prejudice is warranted where a defendant suffers demonstrable prejudice, or the substantial threat thereof, and where the taint cannot be identified and neutralized by other means. In other words, dismissal with prejudice is appropriate in rare cases where it is the only means of adequately protecting an individual's rights and society's interest in checking abuse of the State's power. *State v. Frye*, 897 S.W.2d 324, 330 (Tex.Crim.App. 1995); *Phillips v. State*, 650 S.W.2d 396, 399-403 (Tex.Crim.App. 1983). In *Frye*, the prosecutor's act of interviewing the defendant in violation of his Sixth Amendment right to counsel, which revealed the defense's theory of the case, demonstrated a substantial threat of prejudice arising from the State's misconduct that could not be neutralized by other means. *Frye*, at 326-330. The Court of Criminal Appeals held that dismissal with prejudice was the appropriate remedy. *Id.*; see also *United States v. Morrison*, 449 US 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981) (Dismissal is an appropriate remedy where the State's misconduct of

a constitutional dimension leads to permanent, rather than transitory prejudice, which cannot be purged to assure that a defendant can effectively defend himself and that he will not be unfairly convicted); see also *State v. Terrazas*, 962 S.W.2d 38, 41 (Tex.Crim.App. 1998) (When a Sixth Amendment violation has occurred, the trial court must identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial, but a dismissal may be proper if the defendant suffers demonstrable prejudice, or a substantial threat thereof, and where the trial court is unable to identify and neutralize the taint by other means.).

Upon motion of the defendant showing good cause therefor and upon notice to the other parties, the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs,

objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. TEX. CODE CRIM. PROC. ANN. art. 39.14(a). Pursuant to Article 39.14, Petitioner filed on April 6TH, 2005, his Motion For Discovery seeking "30. (A)ny promises whether implied or expressed, or any aid, assistance, reward, compensation, or benefit conferred or to be conferred upon any witness, which said witness or witnesses would or might receive if said witness testified on behalf of the State, or any implied or expressed promise of aid or assistance or of possible benefit made by the State, by or through any attorney or law enforcement agency, to any attorney or member of the family or to any other person with whom said witness may have been associated or through whom said witness may have learned of said promise." and also on the same date his Motion To Produce Exclupatory and Mitigating Evidence seeking "any exculpatory and/or mitigating evidence and/or facts within the possession, custody or control of the District Attorney or any of his agents," or within the knowledge of, the state or any of its agencies. C.R. 1:40,53. The trial court granted said motions. C.R. 1:47,55.

In all criminal prosecutions the accused shall be confronted by the witnesses against him. U.S. CONST. amend. VI. TEX. CONST. art. I, § 10. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528 (1984); cf. *Strickland v. Washington,* 466 U.S. 668, 684-685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The United States Constitution guarantees criminal defendants “a meaningful opportunity to present a complete defense,” whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment. *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920 (1967); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105 (1974). An essential component of procedural fairness is an opportunity to be heard. *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499 (1948); *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779 (1914).

## APPLICATION

Undisclosed at any point in this matter has been the substance of whatever agreement Stephen Craig Kimberlin brokered with the Randall County *Criminal* District Attorney, and details remain secret to this day.

However, even though TDCJ clearly reflects that Kimberlin remains incarcerated, the Facebook posts showing an aged Kimberlin with his son Codi from 2015 against a Central American backdrop clearly reflects that either Kimberlin was in fact released shortly after his strange Motion For Conference Call in 2012, or Kimberlin's son has found Kimberlin's doppelgänger to substitute. In any event, Kimberlin's Use Immunity Agreement was concealed, as were Patrick's and Guin's as previously complained.

In support, see *Appendix Q*, Register of Actions, State of Texas v. Stephen Craig Kimberlin, Cause No. 15,308-A In The 47TH District Court for Randall County, Texas; *Appendix R* – Register of Actions, State of Texas v. Stephen Craig Kimberlin, Cause No. 17,288-A In The 47TH District Court for Randall County, Texas; *Appendix S* - Offender Information for Stephen Craig Kimberlin as reflected by the Texas Department of Criminal Justice; *Appendix T* - Booking photograph of Stephen Craig Kimberlin; *Appendix U* - Screenshot of the Facebook Page for Stephen Craig Kimberlin; *Appendix V* - Screenshot of the Facebook page of Codi Kimberlin; *Appendix W* - Screenshot of the Facebook page of Jessica Kimberlin; *Appendix X* - Pro Se Motion For Conference Call filed July 27TH, 2012, Cause No. 17,275-A, State of Texas v. Stephen Craig Kimberlin, hereto attached and incorporated.

Petitioner's Issue Number Three should be sustained and his conviction reversed, an order of acquittal entered, or otherwise be granted a new trial.

**PETITIONER'S ISSUE #4: Petitioner was denied Due Process and a fair trial before an impartial jury by and through false evidence material to the State's case, in that new evidence has surfaced, unavailable at the time of his trial, that would tend to exonerate, and which casts doubt on the entirety of the State's concocted story against him, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution.**

## STANDARD OF REVIEW

### FIFTH AMENDMENT & ARTICLE I, § 19

No person . . . shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. The Fifth Amendment of the United States Constitution applies to the individual states by virtue of the Fourteenth Amendment, which commands that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV. The Texas Court of Criminal Appeals has long been aware of its duty to protect rights of the accused and of binding effect of concepts of due

process announced by the Supreme Court of the United States. *Charles v. State*, 424 S.W.2d 909, 913 (Tex.Crim.App.1968), certiorari denied 88 S.Ct. 2319, 392 U.S. 940, 20 L.Ed.2d 1401.

Additionally, Texas provides its own constitutional due process safeguards. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. This is further codified in the Texas Code of Criminal Procedure. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX.CODE CRIM. PROC. ANN. art. 1.04.

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Lowry v. State*, 692 S.W.2d 86, 87 (Tex.Crim.App.1985).

The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly. Accordingly, to constitute a

due process violation, the testimony used by the State must have been false, and it must have been material to the defendant's conviction, meaning "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103-04, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex.Crim.App.2011).

It is sufficient that the testimony was "false." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 (1959). There is no need to show that the witness committed perjury, although whether the testimony is perjury or was knowingly used may impact the applicable standard of materiality. *Ghahremani*, 332 S.W.3d at 478. Testimony that is ‘untrue' is one of many ways jurists define false testimony [and the] Supreme Court has indicated that `improper suggestions, insinuations and, especially, assertions of personal knowledge' constitute false testimony." *Ex parte Chavez*, No. AP-76291, 2010 WL 4638619, at *7 (Tex.Crim.App. Nov. 17, 2010) (not designated for publication) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

The case against Petitioner, as purported by the State of Texas, would require a thorough review of the record in this matter, but the summation is

that the victim, Dustin Pool, was murdered as a result of competition between local, low level cartels.

Evidence has now surfaced in the form of the Affidavit of Jeremy Marc Green, Dustin Pool's business partner and housemate, that casts serious doubt on the entire storyline of the State and which suggests that the victim was murdered as a result of a hit ordered out of "La Pinta," the prison, as reflected in wiretaps provided in a series of federal cases arising from information provided by Dustin Pool, in retaliation for Pool's role as an agent of law enforcement conducting narcotics deals for police profit and leveraging drug dealers into position to do the same as part of a police racketeering scheme in the throes of dissolution following the infamous Tulia fiasco. *See Appendix Y* - Affidavit of Jeremy Marc Green; *Appendix Z* - wiretap excerpt. Accordingly, Petitioner makes demand for new trial to assert his innocence of the charge for which he was convicted and to destroy the charade concealing the true nature of the matter.

Petitioner's Issue Number Four should be sustained and his conviction reversed and that he be granted a new trial.

## PRAYER

Petitioner prays this honorable Court of Criminal Appeals sustain the Petitioner's Issues and reverse his sentence and enter an order of acquittal, and otherwise to remand this cause to the trial court and order that Petitioner be granted a new trial.

Respectfully submitted,

s/JAMES EDD WOOLDRIDGE
JAMES EDD WOOLDRIDGE
S.B.T. No. 24010492
600 S. Tyler Street, Suite 1704
LB 12051
Amarillo, Texas 79101
TEL: (806) 418 8575
FAX: (806) 418 8576
Attorney for Petitioner,
Joshua David Stocker

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, including the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 9,581 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using

Apple iOS Pages 11.0 in Book Antigua 14 point font.

s/JAMES EDD WOOLDRIDGE
JAMES EDD WOOLDRIDGE