REPORTER'S RECORD
VOLUME 2 OF 6 VOLUMES
NO. WR-88,099-01
CAUSE NO. W-15,307-A-1

RECEIVED
COURT OF CRIMINAL APPEALS
1/16/2019
DEANA WILLIAMSON, CLERK

| | | |
|---|---|---|
| EX PARTE | ) | IN THE DISTRICT COURT |
| | ) | |
| | ) | |
| | ) | RANDALL COUNTY, TEXAS |
| | ) | |
| | ) | |
| JOSHUA DAVID STOCKER | ) | 47TH JUDICIAL DISTRICT |

*******************************************************

PRELIMINARY WRIT HEARING

*******************************************************

On the 20th day of September, 2018, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable David Gleason, Judge presiding by assignment, held in Amarillo, Potter County, Texas;

Proceedings reported by Stenographic Method.

A P P E A R A N C E S

FOR THE APPLICANT:
SBOT NO. 24010492
Mr. James Edd Wooldridge
Attorney at Law
600 South Tyler Street
Suite 1704
Amarillo, Texas 79101
(806) 418-8575

FOR THE STATE OF TEXAS:
SBOT NO. 00787925
Mr. Robert Allen Love, II
SBOT NO. 02505850
Mr. Charles David Blount
Randall County Assistant District Attorneys
2309 Russell Long Boulevard, Suite 120
Canyon, Texas 79015
(806) 468-5570

ALSO PRESENT:
SBOT NO. 04300500
Mr. Warren L. Clark
Randall County Assistant District Attorney
2309 Russell Long Boulevard, Suite 120
Canyon, Texas 79015
(806) 468-5570

CHRONOLOGICAL INDEX


| September 20, 2018 | Pg | Vol |
|---|---|---|
| Appearances | 2 | 2 |
| Case Called | 6 | 2 |
| Proceedings Concluded | 28 | 2 |
| Reporter's Certificate | 29 | 2 |

ALPHABETICAL INDEX

| WITNESS | DX | CX | RDX | RCX | VD | VOL |
|---|---|---|---|---|---|---|

NO WITNESSES WERE CALLED

# EXHIBIT INDEX

APPLICANT'S

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
| --- | --- | --- | --- | --- |

NO EXHIBITS WERE OFFERED OR ADMITTED

STATE'S

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
| --- | --- | --- | --- | --- |

NO EXHIBITS WERE OFFERED OR ADMITTED

P R O C E E D I N G S

September 20, 2018

(Open court, Counsel for both sides present)

01:59PM THE COURT: The Court of Criminal Appeals Number is WR-88,099-1. The Trial Court's Number is W-15307A-1, Ex Parte Joshua Stocker.

01:59PM I'm David Gleason, Senior District Judge of the 47th District, and I've been assigned to hear the application filed on Mr. Stocker's behalf.

02:00PM I have not bench-warranted Mr. Stocker in for this hearing, but this being a preliminary what-are-we-going-to-do-kind-of-hearing thing, I think, and when are we going to do it kind of thing.

02:00PM MR. LOVE: Yes, sir.

02:00PM THE COURT: So he is not present at the present time, but the Applicant, Mr. Wooldridge --

02:00PM MR. WOOLDRIDGE: I am present.

02:00PM THE COURT: -- is present and ready.

02:00PM MR. WOOLDRIDGE: I am.

02:00PM THE COURT: Okay. The State?

02:00PM MR. LOVE: Robert Love and Dave Blount for the State, and we're ready.

02:00PM THE COURT: Okay. And Mr. Clark in an advisory capacity?

MR. CLARK: Warren Clark in attendance for the State.

THE COURT: Okay. All right.

We are in Potter County for convenience for this hearing and I -- since it's not really an official hearing, I guess, Mr. Stocker's presence is not necessary yet, in my opinion.

Does everybody agree with that?

MR. LOVE: The State agrees, Your Honor.

MR. WOOLDRIDGE: The Defense agrees.

THE COURT: All right. Well, the Court of Criminal Appeals in its order remanding for evidentiary hearing or factfinding says that the Trial Court is the appropriate forum for this kind of a thing, and that the hearing should be conducted within 90 days of its order, which was July 25th. And that the findings of fact and conclusions of law and things like that need to be on file 120 days of that.

I did ask for an extension of time, and the Court of Criminal Appeals granted that so that my findings and things aren't due to be filed until January 7th. However, they did not mention when the hearing was to be held. They didn't extend the time for that, that I can tell about, but I'm going to presume that they have done that.

02:02PM That being said, they have said several things that I need to find: Whether Mr. Stocker is indigent or not is the -- is the starting point and whether he needs to have court-appointed counsel, but Mr. Wooldridge has represented to me that he is operating pro bono.

02:03PM Is that correct, James?

02:03PM MR. WOOLDRIDGE: That is correct, Your Honor.

02:03PM THE COURT: And has Mr. Stocker agreed to your representation?

02:03PM MR. WOOLDRIDGE: Yes, he has.

02:03PM THE COURT: Okay. So that -- there's no need to make a finding of indigency or court appointment.

02:03PM MR. WOOLDRIDGE: Your Honor, I'm not going to shoot myself in the foot, but the statute does provide that counsel can be appointed. If the Court saw fit to appoint me on Mr. Stocker, just to defray the costs, I'm not going to say no. But if the Court also declines to do so, I'm still going to represent Mr. Stocker.

02:03PM THE COURT: Very well. I decline to do so. So you will be -- you will be representing him then. All right. Pro bono?

02:04PM MR. WOOLDRIDGE: Yes.

02:04PM THE COURT: Okay. Then they say I need to find whether appellant -- whether Applicant suffered a Brady violation on -- on use immunity agreement with the State's witnesses in the case, if they were not disclosed and whether there was a reasonable probability that had the use agreements been disclosed, the outcome of the trial would have been different.

Whether the State's witnesses; Tori Patrick and Guin Garcia testified falsely, that they did not have a use immunity agreement with the State, and whether Patrick and Garcia were critical to the State's case. And they cite Ex Parte Ghahremani, which was a failure to correct false testimony case. If the State should have recognized that the testimony was misleading, so on.

Those are the specific things they want me to find to -- to inquire about, I suppose, and that I can use any means set forth in Article 11.07§3(d).

In that regard, it's my impression that I need to conduct a hearing so that that testimony can be fettered out. There is a catchall phrase in their order that includes anything relevant and appropriate for findings of fact.

I would rather do the hearing sooner

02:06PM rather than later so that it will give me time to -- to
02:06PM make findings and conclusions. And I have tentatively
02:06PM arranged for the use of the Randall County courtroom
02:06PM October 30th, November 1st through November 2nd, if that
02:07PM is feasible for the attorneys involved.

02:07PM Do you-all have any idea about that?

02:07PM MR. LOVE: For the State, we talked about
02:07PM it before we came in, and we think those days -- three
02:07PM days would be plenty of time and it's feasible -- the
02:07PM specific dates that you've chosen we anticipated, and we
02:07PM believe we could take care of it on that time.

02:07PM THE COURT: Mr. Wooldridge?

02:07PM MR. WOOLDRIDGE: Judge, I -- my previous
02:07PM understanding was that it was represented that it was
02:07PM October 30th, 31st and November 1st.

02:07PM THE COURT: Oh, I believe that's right.

02:07PM MR. WOOLDRIDGE: And -- and I don't have
02:07PM a problem with that. I just want to make sure --

02:07PM THE COURT: That's -- that's --

02:07PM MR. WOOLDRIDGE: -- those are the dates
02:07PM that we're talking about?

02:07PM THE COURT: I left out Halloween. I'm
02:07PM sorry. But you are right, it's October 30th, 31st and
02:07PM November 1st.

02:07PM MR. WOOLDRIDGE: And if that's the case,

02:07PM I've been setting everything else aside to be able to do that.

02:07PM THE COURT: Okay. So those dates are -- are agreeable --

02:07PM MR. WOOLDRIDGE: They're fine with us.

02:07PM THE COURT: -- and available?

02:08PM MR. WOOLDRIDGE: Yes.

02:08PM THE COURT: All right. Mr. Stocker, I believe, is currently in the Neal Unit?

02:08PM MR. WOOLDRIDGE: Yes, sir.

02:08PM THE COURT: And I think he would need to be bench-warranted in to attend the hearing.

02:08PM MR. WOOLDRIDGE: Your Honor, since you raised that issue, Mr. Stocker, in his communication with me, has said that he knows that -- of other cases where -- for people who have cases in the local courts, that they've been brought in on a daily basis. And Mr. Stocker has asked that if that's possible, he would like to be brought in on a daily basis, because we're only talking two or three days.

02:08PM And the reason for that is if it -- it causes him a lot of discomfort if -- because they don't take him back -- if you bring him down to Randall County for a couple of days, he starts over when they go out there and he winds up losing commissary and all other

kinds of stuff and starting over. So I do believe that that's been done before, where they've -- I've seen them brought in on a daily basis.

THE COURT: Okay.

MR. WOOLDRIDGE: And that if we can do that, that's what Mr. Stocker would like to do.

THE COURT: Okay. I have no objection to that. Does the State?

MR. LOVE: No, we do not.

THE COURT: Okay. In fact, it would probably be more convenient for all to have the prison staff escort him in and stay with him and then escort him back on a daily basis.

MR. LOVE: Do we know -- do we know the specific mechanics, James?

MR. WOOLDRIDGE: I don't, but I can get with the sheriff and find out.

MR. LOVE: Okay.

THE COURT: If we can get that arranged, I would appreciate you taking care of that for me, getting -- getting him -- getting arrangements made for him to be brought in on a daily basis for those three days.

MR. LOVE: We'll talk with the sheriff's office as well and make sure that whatever we can

accommodate and -- and make it easier for the Court, we will do.

THE COURT: Okay.

Second, that -- that -- I think that's good. We've -- we've got him coming now one way or the other.

Is there a need for bench-warranting any other witnesses?

MR. WOOLDRIDGE: I believe there will be, Your Honor.

THE COURT: And who would they be?

MR. WOOLDRIDGE: Guin Garcia, Craig Kimberlin.

THE COURT: Not Tori Patrick?

MR. WOOLDRIDGE: She's not -- she's out on bond.

THE COURT: She's on bond. Is she available?

MR. WOOLDRIDGE: Yes, she is.

MR. LOVE: Well, she is currently out on bond, but there's been a recent decision by the Court of Criminal Appeals regarding a PDR. And mandate will be issuing at some point between now and then to where she may be in custody by the time that we get to the hearing date on -- at that time.

MR. WOOLDRIDGE: That's -- that's a possibility, Judge. But given the timelines of when they issued that and how long it's going to take mandate to issue and remand it to a trial court and have it executed and other things that may go on in the meantime, I -- I would anticipate at this point that she will be available.

MR. CLARK: Your Honor, the mandate will issue 25 days after the time for filing any motion for rehearing passes. That will fall, by my calculation, in the middle of October.

THE COURT: Okay.

MR. WOOLDRIDGE: It still has to go back to the trial court. And even if she gets -- becomes incarcerated before that, she's still got another 30 to 45 days before she'd catch chain, so she is going to be available.

THE COURT: Okay.

MR. CLARK: Your Honor --

THE COURT: Okay. I think a -- I think a subpoena should issue for her to start with. And if the mandate does come back and she comes in custody, then we'll need to bench-warrant her in for this.

What do you think, Mr. Clark?

Mr. Clark?

02:12PM MR. LOVE: I don't think he heard you.

02:12PM MR. CLARK: Well -- I'm sorry, Your Honor?

02:12PM THE COURT: What about that?

02:12PM MR. CLARK: Well, it's whatever the Court wishes. I just --

02:12PM THE COURT: Hey, I like that. I like that answer.

02:12PM MR. CLARK: And -- and when the mandate issues, then the capias will issue as well on the same day for her arrest.

02:12PM THE COURT: True. All right.

02:12PM MR. LOVE: So --

02:12PM THE COURT: State?

02:12PM MR. LOVE: And I agree with Mr. Wooldridge that she is likely to be available to us, if that happens, in the Randall County Jail. So we can get her brought to the courthouse if that's the situation we find ourselves in.

02:12PM THE COURT: All right. Are you -- are you all in agreement that we can get this done within three days?

02:12PM MR. LOVE: The State -- we believe so.

02:12PM MR. WOOLDRIDGE: As far as I can tell at this time, I believe so.

02:13PM THE COURT: Okay. Are there -- aside from the issues that the Court of Criminal Appeals remanded this for factfinding, are there any other issues that need to be addressed at the hearing?

02:13PM MR. LOVE: In -- in -- in my limited nature with writs, I -- I thought we were limited to the remand order, and you mentioned just a few minutes ago some catchall -- other relevant matters. But wouldn't that be relevant matters to the remand order?

02:13PM THE COURT: I'm not sure.

02:13PM MR. LOVE: Neither am I.

02:13PM THE COURT: I don't know -- well, I'm afraid I -- I advised the Court of Criminal Appeals that I had authorized funding for the investigator and -- and something else. These were ex parte orders, and I may have violated some rule there.

02:14PM Do you have any objection to advising the State of what the content of that is?

02:14PM MR. WOOLDRIDGE: I do, Your Honor.

02:14PM THE COURT: You object?

02:14PM MR. WOOLDRIDGE: Yes.

02:14PM THE COURT: All right. All right. Well, we don't know whether that will be raised yet or not then. Right?

02:14PM MR. WOOLDRIDGE: No, sir.

02:14PM THE COURT: Okay.

02:14PM MR. LOVE: And the -- and the Court referenced -- you referenced some -- all relevant matters. Is that in 11.07§3(d)?

02:14PM THE COURT: I don't believe it is.

02:14PM MR. LOVE: Is it in the order itself?

02:14PM THE COURT: I think so. Let me see. In the findings of fact --

02:15PM MR. LOVE: Oh, regarding the appropriate findings of fact --

02:15PM THE COURT: And conclusions of law that it deems relevant and appropriate to the disposition of the Applicant's claim for habeas corpus relief.

02:15PM MR. LOVE: Okay.

02:15PM THE COURT: I don't know whether I will deem that relevant or not, even if it's brought forward, but there you go. It leaves you kind of in the dark. Sorry.

02:15PM MR. CLARK: Your Honor, I want -- I want to make sure that I understand that we're discussing the four issues -- well, the fact disputes before the Court.

02:15PM THE COURT: Those are what the -- that -- those are what the Court of Criminal Appeals specifically said I should inquire into.

02:15PM MR. CLARK: Oh, yes. Yes. I understand

that -- that maybe you're -- you're in a quandary about what the last sentence means?

THE COURT: Yes, sir.

MR. CLARK: Okay. Well, Your Honor, I guess my question would be that anything that is relevant toward aiding you in your findings and conclusions is necessarily going to be relevant to these four discrete issues that you have to answer. To me that's -- that's what it says.

And let me give you an example.

THE COURT: Thank you.

MR. CLARK: Let me give you an example of what I think that means.

THE COURT: Thank you.

MR. CLARK: One of the questions that the Trial Court will have to answer is, was Tori Patrick critical to the State's case.

THE COURT: That's one.

MR. CLARK: And it directs you to a specific Court of Criminal Appeals' case, which sets forth the test for false evidence. There's a test that the Court will use --

THE COURT: Yes.

MR. CLARK: -- to determine this -- this question.

02:16PM THE COURT: Right.

02:16PM MR. CLARK: And I could see the State producing for the Trial Court extracts of witnesses' testimony which addressed the very same substance that the witness has testified to, who's the subject of the examination. Just throw out that evidence and then look at the rest of the trial and what other witnesses testified to.

02:17PM That will -- that would be exhibits or an aid that would be relevant toward finding your facts -- findings of facts and conclusions of law. That's an example of what that means.

02:17PM THE COURT: Okay.

02:17PM MR. CLARK: You are not prohibited from looking at that evidence that's in the record that's relevant so that you don't have to sit down and read a 15 volume record, Your Honor. That's how long this -- this -- this trial was.

02:17PM THE COURT: I appreciate that.

02:17PM MR. CLARK: So that --

02:17PM THE COURT: I have -- I have read the 7th Court of Appeals unpublished opinion.

02:17PM MR. CLARK: Okay. And I guess what I -- what I am getting to in a long way is this. I saw -- I read -- we got a copy of your response to the Court

02:17PM where you were requesting the extension and they granted
02:18PM you the extension, but there was a mention to --
02:18PM expenses for forensic expert. I -- I noticed that in
02:18PM your letter. So as an appellate lawyer and a former
02:18PM trial lawyer, Your Honor, it made me very curious that
02:18PM we're pretty limited on the issues that we have.
02:18PM I just want to make sure that we're all
02:18PM on the same page here. That's all. Because I saw that
02:18PM and that raised the idea of causation, which has nothing
02:18PM to do with this -- with the remand. So I mean, I was --
02:18PM THE COURT: I appreciate -- I appreciate
02:18PM that position.
02:18PM MR. CLARK: That's why we're --
02:18PM THE COURT: I appreciate that position.
02:18PM MR. CLARK: Yes, sir.
02:18PM THE COURT: And I agree with most of it.
02:18PM Those -- those four issues are what they want me to
02:18PM focus on, but they're -- I don't know about the rest of
02:18PM it yet. And I -- and it's an ex parte order, so I can't
02:19PM really tell you, so...
02:19PM MR. CLARK: Well, I guess -- you know,
02:19PM the lawyers -- I -- I helped counsel the lawyers and
02:19PM prepare for a hearing. I'm just wanting to make sure
02:19PM that they know what the issues are.
02:19PM THE COURT: These -- these four are for

sure.

MR. CLARK: For sure?

THE COURT: These -- these four issues are for sure.

MR. CLARK: Okay.

THE COURT: You know, we've got to focus on that.

MR. CLARK: All right.

MR. LOVE: And if there are --

THE COURT: And I -- and I presume that if another issue should rise, I would have the opportunity to decide whether it was relevant or not.

MR. LOVE: What if it's an issue that's not related to the four and the State is surprised or caught off guard by it? Would the Court entertain a continuance to allow preparation for that in our ability to respond?

THE COURT: I would think so.

MR. CLARK: Your Honor, if -- if that occurs and there is a ligation of an issue outside the remand order, that constitutes a successive writ application, Judge. That's required that it be made in writing, properly filed, so that the Trial Court, according to statute, reviews this new claim, if it's a -- if it's a new claim for relief, so --

02:20PM THE COURT: I don't disagree with that.

02:20PM MR. CLARK: Okay. I just -- I just don't think that it should be litigated in an improper method until it's pled and we are given notice of what's going on.

02:20PM THE COURT: I don't think that's -- I don't disagree with that either.

02:20PM MR. WOOLDRIDGE: Judge, I would have to disagree with that because proceedings in this first writ are not concluded. They're subject to amendment. And until such time as this writ is concluded, there is no successive --

02:21PM THE COURT: I note -- I note your position, Mr. Wooldridge. I'll reserve ruling on that.

02:21PM MR. LOVE: Thank you. As long as you will entertain our request for additional time, if something comes up, we would -- we would appreciate it.

02:21PM THE COURT: Should it -- should it arise.

02:21PM MR. LOVE: Should it arise.

02:21PM Thank you, Your Honor.

02:21PM THE COURT: All right. Does the State have any witness that I would need to bench-warrant in or anything like that?

02:21PM MR. LOVE: No. But do you -- is the Court going to order one side or the other -- we've

02:21PM identified two witnesses that need to be
02:21PM bench-warranted; Guin Garcia and Craig Kimberlin.

02:21PM THE COURT: Right.

02:21PM MR. LOVE: Is the Court going to order
02:21PM one party or the other to do that, because -- I mean, I
02:21PM think we both have the ability to do it.

02:21PM THE COURT: Well, the Applicant has the
02:21PM duty to go forward with evidence.

02:21PM MR. LOVE: Okay.

02:21PM THE COURT: And so I would think
02:21PM Mr. Wooldridge would be able to get those bench warrants
02:21PM prepared and issued, correct --

02:22PM MR. WOOLDRIDGE: We will.

02:22PM THE COURT: -- for Ms. Garcia and Mr. --

02:22PM MR. LOVE: Kimberlin.

02:22PM THE COURT: Mr. Kimberlin. Okay. All
02:22PM right.

02:22PM What else do we need to discuss today?

02:22PM MR. BLOUNT: One other thing, Judge,
02:22PM would be if the -- if the Defense does at some point
02:22PM decide that they are going to present some expert
02:22PM testimony, we would like some notification so we can
02:22PM prepare for that, whether that be 10 days out from the
02:22PM hearing. That probably would be sufficient just so we
02:22PM know we can prepare for --

THE COURT: That would be suitable -- suitable.

October 30th is the starting date for the hearing in Randall County in the 47th, unless they move me to a different courtroom. And we'll be October 30th, 31st and November 1st.

MR. LOVE: So October 20th would be 10 days prior to the start of the hearing, that's a Saturday.

THE COURT: Actually -- actually it would be the day before that.

MR. LOVE: The 19th?

THE COURT: That would be 10 days before, right, because the hearings are going to start on the 30th. Right?

MR. LOVE: Yes, sir.

THE COURT: So it would be -- it would be -- October 19th would be the date for notice, if there's going to be an expert.

MR. BLOUNT: Okay.

MR. LOVE: Thank you, Your Honor.

THE COURT: All right. What else needs to be discussed at this hearing -- or this conference? Excuse me.

MR. LOVE: At the conclusion of the

hearing, are you going to request the parties to submit proposed findings of fact and conclusions of law or is --

THE COURT: It would probably be helpful to me if you both would do that, but...

MR. LOVE: And then you would go with whatever --

THE COURT: I'm -- I'm -- yeah.

MR. CLARK: Well, it depends on when the record can be prepared from the hearing.

THE COURT: It would be soon after the hearing, I think.

MR. CLARK: Yes, sir.

THE COURT: Anything else, Mr. Wooldridge?

MR. WOOLDRIDGE: Yes, sir, there is, Your Honor.

In the original filings on this habeas in our -- the Applicant's First Amended Motion to the -- or the First Amended Reply to the State's Answer, a part of what we did is make an objection to the continued prosecution of this case by the Randall County District Attorney's office -- Criminal District Attorney's office on the basis that the allegations inherent in them are that the District Attorney and his deputies committed

various felonies in this. And it is our position that the Randall County DA should be disqualified as a violation of due process against Mr. Stocker, because they're being allowed to use the power of the State of Texas in order to do -- partially defend themselves. It's not just a matter of what the effects are on Mr. Stocker.

They have a -- they have a very vested personal interest in defeating this habeas for their own personal reasons because -- and to -- well, to allow them to continue in this matter and not appoint a special prosecutor is essentially to allow the prisoners to run the prison.

There's no way you can look at this and say the accusations in this case -- and they're half proven at this point just on the basis of the record. To allow him to continue to defend -- have his deputies come in and defend him, he is going to be under subpoena. He is going to testify and require or -- and what justice is going to require in this case is a neutral, unbiased and un -- fair person on the prosecution's side just as it would require on the bench.

And also specifically because we have the affidavit of Mr. Jeffery Stocker, the Applicant's

father, that in the process of originally defending this matter, they approached Warren Clark and developed sufficient context with that in order to establish an attorney/client relationship, which is prohibited. And Mr. Clark is with the office here in advisement and he formerly had an attorney/client relationship with the Applicant.

THE COURT: Response?

MR. CLARK: Your Honor, I have already addressed this in writing. I will be more than happy to provide you with the response I gave the Court of Criminal Appeals, and that's all contained in that. I will be glad to get that to Your Honor.

But I want to remind the Court, that if there was one single fact issue to such -- what he just said, they would have remanded that back too and asked you to make a finding of that. That's what they thought of his reply.

MR. WOOLDRIDGE: Well, that's speculation. He doesn't know what they thought, and that means nothing -- especially since they included the phrase, anything else relevant. They're putting it on the Court. This was sent down to the Court of Criminal Appeals with nothing, and the Court of Criminal Appeals said, 47th District Court, you are not going to do that.

02:27PM You are going to do your job, so address it.

02:27PM THE COURT: So I take that as a Motion to Disqualify?

02:27PM MR. WOOLDRIDGE: Disqualify. Yes, sir.

02:27PM THE COURT: Denied.

02:28PM A Motion to Recuse might have been a different thing, but a Motion to Disqualify is denied.

02:28PM MR. WOOLDRIDGE: Judge --

02:28PM MR. CLARK: Judge --

02:28PM MR. WOOLDRIDGE: -- there's no such thing as a Motion to Recuse in that case. The district attorney can recuse himself. The case law -- and we've cited it in there -- it has to be a disqualification.

02:28PM THE COURT: It's denied.

02:28PM See y'all on the 30th.

02:28PM MR. LOVE: Thank you, Your Honor.

(Proceedings Adjourned)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS )
COUNTY OF RANDALL )

I, Dina Wall, Official Court Reporter in and for the 47th District Court of Randall County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

WITNESS MY OFFICIAL HAND this the 8th day of January, 2019.

Dina Wall

Dina Wall, Texas CSR 4784
Expiration Date: 12-31-2020
47th District Official Court Reporter
Randall County, Texas
Canyon, Texas 79015
(806) 468-5557