IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSHUA DAVID STOCKER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:21-CV-62-Z-BR |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**

Joshua David Stocker ("Petitioner") filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 47th District Court of Randall County, Texas for the felony offense of capital murder and the resultant sentence of life imprisonment. (ECF 1). For the reasons set forth below, the undersigned United States Magistrate Judge recommends that Petitioner's application for federal habeas corpus relief under Section 2254 of Title 28 of the United States Code be DISMISSED.

## I.  FACTUAL BACKGROUND

The Seventh Court of Appeals clearly summarized the factual background of this case in its May 16, 2007, Memorandum Opinion:

> [Petitioner] participated in a methamphetamine (meth) distribution ring allegedly headed by Craig Kimberlin. The deceased, Dustin Pool, was the head of a rival meth distribution organization. Problems developed between the rival meth distribution organizations. Due to what was perceived to be an escalation in the conflict between the two organizations, a plan was organized to kidnap Pool. According to Tori Patrick, she was approached by [Petitioner] and Guinn Garcia and requested to lure Pool to her apartment. On or about March 9, 2003, Patrick invited Pool to her apartment and, when he arrived, [Petitioner] and his brother,

    Michael Stocker, were waiting for him inside the apartment. Shortly after Pool arrived, [Petitioner] stepped out of a hallway area and assaulted Pool with a fireplace poker, striking Pool in the head. Subsequently, Pool was bound and eventually moved to a farm in Carson County belonging to Michael Elliston. Elliston testified that he was contacted by Kimberlin and requested to assist in moving Pool to his farm. Elliston located a large box-type container that could be used to move Pool. Once Pool was moved to the Elliston farm, he was taken to a second floor area of a shop building where he was bound to a chair and beaten by [Petitioner] and other members of the Kimberlin meth distribution organization. A decision was made to move Pool to another location and, at that time, a sock was placed in his mouth and his head was taped up with duct tape. After the first taping of Pool, [Petitioner] decided to re-tape him and did so in a manner that did not allow Pool to breathe. Testimony indicated that Pool struggled after the sock was placed in his mouth and the duct tape was wrapped around his head but he ceased to struggle after a few moments. After the taping, Pool was moved to a Lincoln Navigator belonging to Josh Bledsoe, the supplier of meth to the Kimberlin organization. During the process of moving Pool from the upstairs of the Elliston building, Pool was dropped head-first, striking the stair, and was dragged down the stairs such that his head struck each step.

    An attempt was made to move Pool to a lake house at Lake Meredith that belonged to a relative of another associate of Craig Kimberlin. This proved unsuccessful and eventually the Lincoln Navigator, with Pool inside, ended up in the garage of the home of another Kimberlin associate in Amarillo. Destry Keeling, another associate of Kimberlin, provided a location to bury the body at an abandoned grain elevator in Randall County, Texas. Pool's body was placed in the bottom of the grain elevator headfirst and approximately four feet of concrete was placed on top of the body. The burial was completed on March 12, 2003. The body was buried in a manner that the top of the head touched the dirt beneath the concrete. The body was not recovered until June 15, 2003.

(ECF 16-5 at 1–3).

## II.    PROCEDURAL BACKGROUND

Petitioner was charged by Indictment in Randall County, Texas with capital murder, in violation of Section 19.03 of the Texas Penal Code. (*See* ECF 21-21 at 3); *State v. Stocker*, No. 15,307-A; Tex. Penal Code Ann. § 19.03 (West 2003). Specifically, the Indictment alleged that on or about March 9, 2003, Petitioner:

    did then and there, in the course of committing and attempting to commit the kidnapping of Dustin Pool, intentionally commit murder by intentionally causing the death of an individual, to-wit: Dustin Pool, but suffocating Dustin Pool by

>  putting a sock into the throat of Dustin Pool and covering Dustin Pool's mouth with tape[.]

(ECF 21-21 at 3).

Petitioner's case was called for a jury trial on July 11, 2005. (ECF 21-21 at 18). Petitioner pleaded not guilty. (*Id.*). After the conclusion of the guilt/innocence phase of the trial, the jury found Petitioner guilty of the felony offense of capital murder, as alleged in the Indictment. (*Id.* at 18–19). On July 21, 2005, the trial court sentenced Petitioner to confinement for life in the Texas Department of Criminal Justice—Correction Institutions Division. (*Id.* at 19).

On May 16, 2007, the Seventh Court of Appeals of Texas affirmed the judgment of the trial court on direct appeal. (ECF 16-5 at 1–9); *see Stocker v. State*, No. 07-05-0284-CR, 2007 WL 1435391, at *1 (Tex. App.—Amarillo May 16, 2007) (mem. op., not designated for publication). On September 12, 2007, the Texas Court of Criminal Appeals ("TCCA") refused Petitioner's petition for discretionary review. (ECF 21-17 at 6); *Stocker v. State*, No. PD-0968-07 (Tex. Crim. App. Sept. 12, 2007).

Petitioner sought collateral review of his conviction and sentence by filing a petition for state habeas corpus relief on January 16, 2018.[1] (ECF 21-17 at 4–19). On April 1, 2020, the TCCA denied Petitioner's state habeas application with a written order. (ECF 21-14 at 1–2); *see In re Stocker*, WR-88,099-01 (Tex. Crim. App. Apr. 1, 2020). The written order by the TCCA contained the following reasoning:

>  Applicant was convicted of capital murder and sentenced to life years' imprisonment. The Seventh Court of Appeals affirmed his conviction. *Stocker v. State*, No. 07-05-0284-CR (Tex. App. — Amarillo May 16, 2007) (not designated for publication). Applicant filed this application for a writ of habeas corpus in the

---

[1] The prison mailbox rule applies to state habeas applications. *See Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013). However, the rule does not apply to prisoner litigants represented by counsel. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002). Petitioner's Application for State Writ of Habeas Corpus shows he was represented by counsel. (ECF 21-17 at 17–18).

3

> county of conviction, and the district clerk forwarded it to this Court. *See* TEX. CODE CRIM. PROC. art. 11.07.
>
> Applicant claims that two of his co-defendants, Tori Patrick and Guinn Garcia were granted use immunity agreements two years before his trial took place and that both witnesses were instructed to lie about the agreements. Applicant contends that the prosecutor sponsored his investigator to lie about the existence of the agreements to bolster the testimony of the co-defendants through aggravated perjury. In response to this Court's remand order, the trial court conducted a live habeas hearing and made findings of fact and conclusions of law. The trial court concludes that Applicant has suffered a *Brady* violation by the untimely disclosure of the use immunity agreement signed by co-defendant Tori Patrick, by the State's denial of the existence of the agreement, and by the State's failure to correct misleading testimony about the agreement during Applicant's trial. The trial court concludes that it is likely that the jury might have reached a different conclusion had they been informed of Tori Patrick's signed use immunity agreement.
>
> This Court's independent review of the entire record suggests that although the State did fail to disclose the existence of the signed use immunity agreement with Tori Patrick, Patrick did testify at Applicant's trial that her understanding was that her testimony would not be used against her. The State did disclose to the defense the existence of a signed use immunity agreement with Guinn Garcia, and there was testimony from the State's investigator indicating that all the State's witnesses were given an opportunity to sign a use immunity agreement. Based on the entire trial record, it appears that the strength of the other evidence at trial was such that the result of the trial would not likely have been different had the jury been informed that Tori Patrick had signed a use immunity agreement. Relief is denied.

*In re Stocker*, WR-88,099-01 at *1–2.

Petitioner filed the instant federal petition on April 1, 2021. (*See* ECF 1). Respondent filed an Answer with Brief in Support on October 14, 2021, arguing that Petitioner's petition is barred by limitations pursuant to 28 U.S.C. § 2254(d) and should therefore be dismissed with prejudice. (ECF 24 at 1–13). Petitioner filed an Amended Reply to Respondent's Answer on November 12, 2021. (ECF 27).

### III.    PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

4

1. The State failed to disclose immunity use agreements it made with witnesses Tori Patrick and Guinn Garcia and instructed them to commit perjury regarding the agreements;

2. Petitioner was denied due process and a fair trial because the State illegally wiretapped his co-defendant and did not disclose it;

3. Petitioner's co-defendant, Stephen Craig Kimberlin, had an immunity use agreement with the State and was granted a "secret early release" from prison "in exchange for who knows what"; and

4. A newly discovered affidavit from the complainant's business partner "casts doubt on the entirety of the State's concocted story against him."

(ECF 1 at 6–7; ECF 8 at 8–9).

## IV.    STANDARD OF REVIEW

Section 2254 of Title 28 of the United States Code authorizes a federal court to entertain a petition for a federal writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). However, a court may not grant relief on any claim that was adjudicated on the merits in state court proceedings unless a petitioner shows that the prior adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the "contrary to" clause, a federal habeas court may grant relief if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520–21. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable—an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the [Antiterrorism and Effective Death Penalty Act

6

("AEDPA")] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). "Under the [AEDPA], a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)).

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez,* 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to section 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying section 2254(d)'s standards of review). A "paper hearing" is sufficient to afford a full and fair hearing on factual issues. *Hill v. Johnson,* 210 F.3d 481, 489 (5th Cir. 2000).

Moreover, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

7

*Id*. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). This standard is difficult to meet, and the Supreme Court has affirmed that "it was meant to be" so. *Id*. at 102.

Finally, the Supreme Court has also held that review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011). Perhaps more compelling, the Supreme Court made clear that Section 2254(e)(2)—the statutory mechanism through which Congress limited a petitioner's ability to obtain a federal evidentiary hearing (and to expand the federal habeas record)—has no application when a federal court reviews claims pursuant to Section 2254(d), whether or not a petitioner might meet the technical requirements of section 2254(e)(2). *See id.* at 183–86 (showing that the Supreme Court explicitly rejected the proposition that Section 2254(d)(1) has no application when a federal court admits new evidence under Section 2254(e)(2)); *see also id.* at 203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record . . . [violated § 2254(d)(1),] our analysis is at an end. We are barred from considering the evidence Pinholster submitted in the District Court that he contends additionally supports his claim.") (internal citation omitted). The Supreme Court reasoned:

> Today, we . . . hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.

*Id*. at 185. Therefore, this Court must review the reasonableness of the state court determinations under Section 2254(d), with reference only to the record actually before the state court.

### V.     STATUTE OF LIMITATIONS

Petitioner filed the instant federal petition on April 1, 2021. (*See* ECF 1). Respondent contends that Petitioner's claims are all barred by the one-year statute of limitations imposed by

8

Section 2254(d). (ECF 6 at 5–12). Title 28 U.S.C § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners, as follows:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of—
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

Petitioner was sentenced on July 21, 2005. (ECF 21-21 at 19). The Seventh Court of Appeals of Texas affirmed the judgment of the trial court on May 16, 2007, and the TCCA refused Petitioner's petition for discretionary review on September 12, 2007. (ECF 16-5 at 1–9; ECF 21-17 at 6). Petitioner did not file a writ of certiorari with the Supreme Court of the United States, and the deadline to do so was December 11, 2007. *See Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003) (explaining that a conviction becomes final upon the expiration of time for filing further appeals); Sup. Ct. R. 13.1 (stating that a petition for a writ of certiorari to review a judgment

9

entered by a state court of last resort is timely when it is filed within 90 days after entry of the judgment). Petitioner's judgment of conviction thus became final on December 11, 2007. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149–50 (2012) (discussing the two prongs of 28 U.S.C. § 2244(d)(1)(A)).

Under Section 2254(d)(1), the limitations period shall run from the date on which the judgment became final unless one of the circumstances set forth in 28 U.S.C § 2244(d)(1)(B), (C), or (D) clearly applies. *See* 28 U.S.C. § 2244(d)(1). One of these enumerated circumstances, Section 2244(d)(1)(B), is argued to apply here; specifically, Petitioner argues that all of his claims were not discoverable until after his co-defendant's 2017 revocation hearing, due to impediments to discovery created by State action (e.g. *Brady* violations). (ECF 1 at 9). Although the Respondent contends that the immunity use agreements were known by Petitioner's counsel at the time of trial (ECF 24 at 7–8), thus making Petitioner's first and third claims discoverable at that time, the TCCA's opinion and remand to the trial court calls into question whether such evidence was made available to the Petitioner at the time of trial. *See In re Stocker*, WR-88,099-01 at *1–2. However, even in light of a much later discovery date, that being the January 24, 2017 appeal filing of the co-defendant, the Petitioner's claims are still time barred absent other statutory or equitable tolling. (ECF 24 at 9 n.1) (noting that Petitioner's current counsel filed the appellate brief regarding these issues for the co-defendant). Thus, even giving all leniency in a discovery date to the Petitioner, the latest possible date to file his federal habeas application was **January 24, 2018**.

## VI.    STATUTORY TOLLING

Under Section 2254(d)(2), the limitations period will be tolled while a proper state habeas application is pending. *See* 28 U.S.C. § 2244(d)(2). Petitioner's state habeas application was filed on **January 16, 2018**—and tolled the applicable limitations period while it was pending. The

application was decided on **April 1, 2020**. (ECF 21-17 at 4). However, only **eight days** in the statutory filing period for federal habeas relief remained between the January 16, 2018 filing and the *latest possible discovery date* of January 24, 2018, rendering a filing deadline of **April 9, 2020** as the filing deadline for federal habeas relief pursuant to statutory tolling rules once the TCCA denied the state habeas application. Petitioner did not file his application until **April 1, 2021**. Petitioner argues that the "complete factual predicate" for his claims was still largely unknown at the time of filing his state habeas petition on January 16, 2018, and that "ongoing discovery furthering the factual predicate" occurred *while* his state habeas case was pending, from the evidentiary hearing held in the state court. (ECF 27 at 6). This Court disagrees that Petitioner is entitled to ongoing tolling for "further factual development" of his claims.

## VII.  EQUITABLE TOLLING

Equitable tolling can apply to the one-year limitations period of Section 2244(d) in "rare and exceptional circumstances[.]" *Davis v. Johnson*, 158 F.3d 806, 810–11 (5th Cir. 1998). A federal habeas petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (internal quotation marks omitted). The United States Supreme Court has "reaffirm[ed] that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016).

Equitable tolling principally applies where the petitioner is "actively misled" by the respondent about the cause of action or was prevented in some extraordinary way from asserting his rights. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). "Accordingly, 'neither

11

excusable neglect nor ignorance of the law is sufficient to justify equitable tolling.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) (internal quotation marks and citations omitted).

Under Section 2244(d)(1), the limitations period begins running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." It is well established that this "means the date a petitioner is on notice of the facts which would support a claim, *not the date* on which the petitioner has in his possession evidence to support his claim." *Osborne v. Hall*, 934 F.3d 428, 432 (5th Cir. 2019) (marks omitted) (emphasis added). Petitioner argues that the "ongoing" factual predicate was discovered *while* his state habeas case was pending, such that this factual predicate was not discovered until after his state habeas was actually filed. The Court is not persuaded. Rather, the Court finds that this is *exactly* the situation described by the *Osborne* decision, where Petitioner was gathering further *evidence* of his factual claims during the state court process. This does not change the statutory deadlines for filing federal habeas relief. *See id*. at 432.

It has been settled law for over 50 years that the Government is required to turn over evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, prosecutors must disclose material, favorable evidence "even if no request is made" by the defense, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case...." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Regardless, the Petitioner makes more of the government's actions than is warranted. The issue here is not whether the government violated *Brady v. Maryland*; rather, the issue is whether the government's actions prevented Petitioner, if he exercised reasonable diligence, from discovering the information, in turn allowing Petitioner

extra time to bring his habeas claims. Here, even if the Court generously assumes that the State did not fully disclose all *Brady* materials to Petitioner at the time of trial and that Petitioner did not discover these omissions until the co-defendant's appeal in January of 2017, Petitioner, by his own admission, became aware of the immunity use agreements and co-defendant's circumstances at that time and then waited until the following year to file his own state habeas application in January of 2018. Then, Petitioner waited almost a year after his state habeas application was denied to file federal habeas relief, despite the factual predicate being discovered almost a year before he filed his state court habeas application. This Court finds Petitioner is not entitled to equitable tolling on any grounds. His "ongoing factual predicate" theory is not supported by the law.

In cases where the courts have allowed tolling for *Brady* violations, it has always been because the factual predicate was not *actually discovered* by the petitioner in a case, not where "ongoing factual discovery" was occurring; further, Petitioner's argument does not hold water. Even if his "initial" factual predicate, his co-defendant's appeal, was discovered in 2017, reasonable diligence could have revealed the remaining factual predicate in the year it took to file his state court habeas application, and Petitioner could have then filed his federal habeas application in the eight days remaining for his claims. Instead, Petitioner waited an additional *year* to pursue federal habeas relief, on some unsupported theory that his factual predicate date could be moved down the timeline as *evidence* was discovered to support it. In fact, such a theory is directly contradicted by published Fifth Circuit precedent before the conclusion of Petitioner's state court habeas proceedings. *See Osborne*, 934 F.3d at 431–32.

Therefore, the Court finds that Petitioner has not met his burden to show that he is entitled to equitable tolling. *See McQuiggin*, 569 U.S. at 391; *Hardaway v. Davis*, 684 F. App'x 444, 446 (5th Cir. 2017). The law does not support Petitioner's theory of continuing discovery of a factual

predicate correlating with the application of tolling. As neither statutory nor equitable tolling applies to these claims, Petitioner's federal habeas application is time-barred.

## VIII. ACTUAL INNOCENCE

A credible showing of "actual innocence" may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin*, 569 U.S. at 392. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. (*quoting Herrera v. Collins*, 506 U.S. 390, 404 (1993)). A habeas petitioner who seeks to surmount a procedural default through a showing of "actual innocence" must support his allegations with "new, reliable evidence" that was not presented in the underlying proceedings and must show that it was more likely than not that, in light of the new evidence, no fact finder, acting reasonably, would have found the petitioner guilty beyond a reasonable doubt. *See id.* at 394–95; *Schlup v. Delo*, 513 U.S. 298, 326–29 (1995); *see also House v. Bell*, 547 U.S. 518 (2006) (discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. *Bousely v. United States*, 523 U.S. 614, 623–24 (1998).

Here, the decision of the TCCA supports that Petitioner's trial counsel had adequate information to examine all witnesses properly during the underlying criminal trial. *In re Stocker*, WR-88,099-01 at *1–2. Nothing in Petitioner's application changes the analysis of the TCCA or calls into questions the factual or legal conclusions of that decision. Thus, Petitioner's allusions to actual innocence do not toll the limitations period.

14

### IX.    RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Joshua David Stocker be DISMISSED AS TIME BARRED, and that this case be DISMISSED WITH PREJUDICE.

### X.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED May 16, 2023.

*(signed)* Lee Ann Reno
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).